# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | No. 12-03912 |
| Windmill Environmental Services, LLC | ) | Hon. Judge Jack B. Schmetterer |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | | Hearing Date: 1/24/2013 |
| | | at 10:00 a.m. |

## NOTICE OF MOTION

Bruce de'Medici, counsel for Windmill Environmental Services, LLC, filed his application with the United States Bankruptcy Court for an order allowing and directing payment of compensation of $100,000 and reimbursement of costs of $426.64 that he incurred while providing services to Windmill Environmental Services, LLC and the bankruptcy estate.  Bruce de'Medici served a copy of the application upon counsel for parties that appeared in this case and creditors listed as holding the twenty largest claims in this case.

**If you did not receive a copy of the application, you may request one from Bruce de'Medici by contacting him at the address shown below or obtain one from the website for the Bankruptcy Court, at www.ilnb.uscourts.gov through the Court's PACER system.**

**To support the request for interim allowance and payment, Bruce de'Medici must provide notice of the hearing to creditors and parties in interest.  This is that notice.**  If you do not want the court to enter relief in accordance with the application or if you want the court to consider your views on the application, then you or your attorney must attend the **hearing** scheduled to be held on **January 24, 2012**, at **10:00 a.m.** in **Courtroom 682** of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois 60604.

/s/ Bruce de'Medici

Bruce de'Medici        #6184818
834 Forest Ave
Oak Park, IL 60302
Tel: 312.731.6778
E-mail: bdemedici@bdmlawgroup.com

## CERTIFICATE OF SERVICE

I, Bruce de'Medici, an attorney who is licensed to practice law in the State of Illinois, certify that on the 2nd day of January, 2012, I served the attached NOTICE OF MOTION and FINAL APPLICATION OF DEBTOR'S COUNSEL FOR COMPENSATION upon Registrants in the case through the Court's Electronic Notice for Registrants; the Office of the US Trustee, the Debtor, and a creditor which did not appear in this case, by First Class mail as shown below; and creditors listed on the attached Supplemental Service List by First Class Mail, also as shown below.

/s/ Bruce de'Medici

**Registrants Served through the Court's Electronic Notice for Registrants.**

| Office of the United States Trustee<br>E-mail: USTPRegion11.es.ecf@usdoj.gov | Michele M. Reynolds<br>Dowd, Bloch & Bennett<br>E mail: efile@dbb-law.com |
| --- | --- |
| Robert D. Mollhagen<br>Varnum<br>Email: rdmollhagen@varnumlaw.com | Marc Fenton<br>Statman Harris & Eyrich, LLC<br>Email: mfenton@statmanharris.com |

**Parties Served by First Class Mail**

| Office of the United States Trustee<br>219 S. Dearborn Street<br>Room 873<br>Chicago, IL 60604 | Jerome Dykstra<br>Windmill Environmental Services, LLC<br>170 Shepard Avenue<br>#A<br>Wheeling, Illinois 60090 |
| --- | --- |
| Stephen J. Rosenfeld<br>Mandell Menkes LLC<br>One North Franklin Street<br>Suite 3600<br>Chicago, Illinois 60606 | |

**Supplemental Service List**

| | |
|---|---|
| Associate Area Counsel, SB/SE<br>Internal Revenue Service, #2300<br>200 West Adams Street<br>Chicago, IL 60606-5208 | Midwest Welding Supply, Inc.<br>5318 Kedzie Ave<br>Chicago, IL 60632-2618 |
| Smith-Amundsen<br>c/o William Hackney<br>150 N. Michigan Ave, #3300<br>Chicago, IL 60601 | Brad Craig Trucking<br>6260 West State Hwy 10<br>North Judson, IN 46366 |
| Internal Revenue Service<br>PO Box 44010<br>Indianapolis, IN 46244<br>Facsimile: 312 368 8710 | Chicago Cement, Inc.<br>2255 S. Lumber St.<br>Chicago, IL 60616 |
| Witham Sales & Services<br>6435 Howard Ave<br>Hammond, IN 46320 | Silbrico Corp.<br>8585 Broadway, Suite 480<br>Merrillville, IN 46410 |
| Lafarge North America - Director of Credit<br>20 Oak Hollow, Suite 260<br>Southfield, MI 48033 | Caterpillar Financial Services<br>2100 West End Ave<br>P.O. Box 34001<br>Nashville, TN 37203-5251 |
| Blackman Kallick<br>7879 Eagle Way<br>Chicago, IL 60678-1278 | RSC Equipment Rental<br>3200 N. Harbor Lane #100<br>Minneapolis, MN  55447 |
| Roland Machinery<br>816 N Dirksen Pkwy<br>Springfield, IL 62702-6115 | Angel Abatement<br>8585 Broadway, Suite 480<br>Merrillville, IN 46410 |
| Clean Harbors Environmental Services<br>1501 Washington St.<br>P.O. Box 859048<br>Braintree, MA 02185-9048 | Mittler Supply<br>Praxiar Distribution<br>2301 S.E. Creekview Drive<br>Ankeny, IA 50021 |
| Indiana Department of Revenue<br>1411 E 85th Ave<br>Merrillville, IN 46410<br>Case #263360 | Indiana Department of Revenue<br>10 N Senate Ave.<br>Indianapolis, IN 46204-2277   UC-1 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | No. 12-03912 |
| | ) | |
| Windmill Environmental Services, LLC | ) | Hon. Judge Jack B. Schmetterer |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | | Hearing Date: 1/24/2013 |
| | | at 10:00 a.m. |

## COVER SHEET FOR FINAL
## APPLICATION FOR PROFESSIONAL COMPENSATION

Name of Applicant:   Bruce de'Medici

Authorized to Provide Professional Services to: Windmill Environmental Services, LLC

Date of Order Authorizing Employment:     March 3, 2012

Period for Which
Compensation is Sought: From February 1, 2012, through December 31, 2012

**Bruce de'Medici**

| | |
|---|---|
| Amount of Fees Sought for Allowance | $100,000 |
| Amount of Fees Sought for Payment | $100,000 |
| Amount of Expense Reimbursement Sought: | $426.64 |

This is an:        Interim Application        Final Application **X**

Prior applications that these professionals filed, if any:  None

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Any Amount Ordered W/held |
|---|---|---|---|
| | | | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | No. 12-03912 |
| | ) | |
| Windmill Environmental Services, LLC | ) | Hon. Judge Jack B. Schmetterer |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | | Hearing Date: 1/24/2013 |
| | | at 10:00 a.m. |

### FINAL APPLICATION OF
### DEBTOR'S COUNSEL FOR COMPENSATION

Bruce de'Medici (the "Applicant") respectfully submits this final application for the allowance and payment of compensation pursuant to sections 330(a) and 503(b) of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq*. (the "Code"), for services rendered to Windmill Environmental Services, LLC and the estate in this case, and states in support as follows:

### I
### STATEMENT IN SUPPORT OF
### APPLICATION OF BRUCE DE'MEDICI FOR
### COMPENSATION AND REIMBURSEMENT OF EXPENSES

NARRATIVE SUMMARY

A.    BACKGROUND

1.    Windmill Environmental Services, LLC**,** debtor herein (the "Debtor"), commenced this case on February 1, 2011, by filing a petition for relief under chapter 11 of the Code.  This Court did not enter any order appointing any trustee in this case and the Debtor remained as a debtor in possession throughout this case.  The Debtor solicited votes in favor of its plan of reorganization and creditors that submitted or filed ballots voted unanimously to accept the plan.  On December 3, 2012, this Court entered an order confirming the plan.

2.       On March 8, 2012, this Court entered its order authorizing the Debtor to retain the

Applicant as its counsel pursuant to section 327 of the Code.  The estate employed the Applicant

at the respective hourly rates and pursuant to section 327(a) of the Code.  The application before

the Court does not include any time for which the Court previously entered an award or for

which the estate previously remitted payment.  Prior to confirmation of the plan, the Applicant

did not seek and the estate did not provide or pay any retainer; post-confirmation the

Reorganized Debtor tendered a retainer of $20,000 to the Applicant.  The Trustee did not

'promise' any payments to the Applicant outside of advising it that it would have the right to

seek compensation and reimbursement of costs pursuant to sections 330(a) and 503(b) of the

Code.  The Applicant's request is not subject to any caps or limitations on fees or other charges.

The Applicant rendered services to the Trustee and is seeking compensation pursuant to sections

330(a) and 503(b) of the Code.

3.       The Applicant's request includes compensation for the following professionals:

| PROFESSIONAL/PARAPROFESSIONAL | HOURLY RATE |
| --- | --- |
| Bruce de'Medici – Prof. | $425/hour except travel billed @ $125/hour |
| Rita de'Medici – Paraprof. | $125 |

The Applicant charges non-bankruptcy clients the same rate for similar services.

4.       This is a final application.  The Application covers services rendered from

February 1, 2012, through December 31, 2012.

B.       CASE STATUS

5.       Through the efforts of the Applicant and the Debtor, creditors unanimously

accepted the Debtor's plan and this Court confirmed it.  The Debtor's success at confirming a

plan is not undistinguished.  Studies reflect that a minority of chapter 11 cases result in

confirmed plans.  In their study "*The Success Of Chapter 11: A Challenge To The Critics*",

Elizabeth Warren and Jay Lawrence Westbrook report that in their sample of chapter 11 cases

filed in 2002, only 33.4% resulted in a confirmed plan and within a nine month measurement

period (one month longer than the span of time required for the Debtor to confirm its plan), 27%

of the chapter 11 cases studied had a confirmed plan in place (Elizabeth Warren and Jay

Lawrence Westbrook, "*The Success Of Chapter 11: A Challenge To The Critics*", 107 Michigan

Law Review 603, 616 (2009), hereafter "Warren and Westbrook").  Notably, 82% of the cases

filed in 2002 that confirmed a plan did so outside the time limits imposed by the 2005

Amendments. (Warren and Westbrook, at 621).  In a study conducted more recently, the

Executive Office of the United States Trustee reported that 33.2% of Post-BAPCPA cases

yielded confirmed a chapter 11 plan (Exhibit "i", pg. 6) with an average time of 12.6 months

required to do so (Ex. "i", pg. 7).

6.    The Reorganized Debtor is continuing the Debtor's operations and generating

revenue to perform the obligations under the plan.  To the best of the Applicant's knowledge, the

Debtor has paid to the Office of the United States Trustee all quarterly fees due and owing.

C.    PROJECT SUMMARY

7.    The success of confirming the plan required and reflected cooperation of the

Debtor's secured lenders, constructive input from the Office of the United States Trustee,

diligent efforts of the Debtor's management and employees, and advice and professional services

of the Applicant.  The success did not occur by accident or without the foregoing efforts.  This

Court granted the Debtor's request to extend the time to file its plan but only did so once and

only for a limited time.  The Debtor and the Applicant worked diligently and cooperatively to meet this Court's deadline: this required, in salient part, the Debtor's design of sales and operational models that would support a reorganization plan and implementation of those models, and the Applicant's advice and prosecution of necessary legal steps to obtain the authority from this Court to support those models.  The confirmation of the plan is the litmus proof of the quality and success of these efforts.

8.      The Applicant served as counsel for the Debtor throughout this case and devoted substantial time to numerous legal matters while doing so.  The services underlying this Application manifest the efforts of the Applicant to steer the Debtor toward its confirmation and the Applicant is entitled to be compensated for those services.  The Applicant financed the estate through his services and did so to protect the interests of the estate.

9.      In compliance with the applicable standards for the preparation of fee applications, the Applicant set forth the time that it devoted to the foregoing, a narrative of the matters that are involved, and the benefit and results for the estate.  Additionally, the Applicant included herein detailed time records in chronological order for each category of service.  This Court did not previously award compensation to any party in this case.

10.      The Applicant is not charging for all of its time to this case.  As will appear below in the descriptions of the various categories of services that the Applicant provided, the Applicant reduced the request for compensation for certain of the services.  The Applicant did so out of the good faith intent to reduce the administrative cost to the Reorganized Debtor of prosecuting this case to confirmation and not because of any diminished value from the Applicant providing the services in question.

## A.    ASSET DISPOSITION

11.    The Applicant seeks allowance and payment for 9.4 hours in performing services under this category, at a value of $3,995; the Applicant is requesting an award and payment of $3,000.  A copy of the entries for these services is included within Exhibit "A".

12.    At the time that the Debtor filed its petition for relief, its assets included four trailers that provided no present value to the Debtor.  The Debtor was not utilizing them in its operations and three of the Sale Trailers were not even "road worthy".  Three of them required structural frame-work, two required pump work, and between the four of them they required eight replacement tires.  An unrelated third party offered to the Debtor to buy the four unworkable trailers in exchange for two semi-tractors as the purchase price and consideration for his purchase.  Because of the benefit that this provided to the Debtor and estate, the Debtor accepted the offer, subject to approval of this Court (and proposed that the liens of Fifth Third Bank and Greenfield Commercial Credit attach to the two semi-tractors to the same extent that their liens attached to the Debtor's four trailers).  On March 13, 2012, this Court entered its order approving the trailer swap (Dkt. #49).  The Debtor placed the two semi-tractors to work in its operations and improved its operations and revenue by the transaction.

13.    The Applicant prepared the motion for the Trustee to obtain authority to conduct that sale and negotiated with parties in interest to educate them on the efficacy of the transaction and addressed this Court on that efficacy.  The Applicant's services in this regard were necessary and productive for the estate and the cost was reasonable for the scope of work involved.

B.   BUSINESS OPERATIONS

14.   The Applicant expended 118.9 hours in performing services under this category, at a value of $48,672.50; the Applicant is requesting an award and payment of $47,000.  A copy of the entries for these services is included within Exhibit "B".

15.   The Applicant performed several tasks that supported the Debtor's operations toward the reorganization: working with the Debtor to structure a reorganization strategy; reviewing feasibility; reviewing confirmation requirements; analyzing financing necessary for a reorganization; discussing the Debtor's proposed reorganization with secured lenders to assure their agreement with a plan; preserving the Debtor's right to file a plan; preparing the disclosure statement and plan; and prosecuting the confirmation process to confirmation.  These were collaborative activities with Mr. Dykstra, the Debtor's CFO and operating engineer, and, on occasion, an advisor for Mr. Dykstra's other business enterprise who is knowledgeable on financing options that the Debtor might have chosen to pursue to fund the reorganization.  The Applicant also reviewed financing options with a conventional lender.  The benefit of this was to enable the Debtor to be informed about what financing options might be available in the market, either presently or given certain performance achievements in the future.

16.   Ultimately, the Debtor structured its operations and sales strategy to support reorganization and worked with the Applicant to fit that into a plan that complied with the Code. The Debtor also determined that it would not need refinancing to propose a reorganization plan. Arriving at this determination involved, again, several meetings during the span of this case to identify and analyze options for the reorganization and review drafts of a disclosure statement and plan.  The Applicant and the Debtor worked collaboratively to draft these documents and exchanged successive drafts with comments (and remarks on each other's comments) to arrive at

the pleadings that this Court approved and confirmed.  The Applicant advised the Debtor on the

necessary structure and content of the documents and the Debtor provided the text necessary for

the Applicant's preparation of the disclosure statement and information necessary for the

preparation of the plan.  Also, as noted above, the Debtor and Applicant accomplished this in a

statistically significant short time and without formal objections that could have engendered

delay and additional administrative expense.  In short, the Debtor obtained unanimous

acceptance, with no formal objections, within a time frame that only a minority of chapter 11

debtors obtain, even in comparison to all chapter 11 debtors within the samples (and not just in

comparison to small business debtors)

17.     The Applicant's services in this regard were necessary for the Debtor's ability to

discharge its fiduciary responsibility and confirm a reorganization plan.  In providing them the

Applicant provided a service to the Debtor and the estate and the Applicant is entitled to be

compensated for them.

## C.     CLAIMS ADMINISTRATION AND RECONCILIATION

18.     The Applicant expended 19.3 hours in performing services under this category, at

a value of $7,512.50; the Applicant is requesting an award and payment of $7,400.  A copy of

the entries for these services is included within Exhibit "C".

19.     The Applicant, Mr. Dykstra, and Mr. Brown reviewed claims that parties filed in

this case to compare them to claims of those parties as the Debtor scheduled them; the Debtor

based its schedule of claims according to its internal accounts payable listing.  This review of

claims filed focused on two salient points: (i) were claims as filed consistent with the amounts

shown in the Debtor's accounts payable listing; (ii) did parties file claims for which the Debtor

did not schedule any debt.  As to the first of these points, parties which filed claims actually did

so in amounts that in the aggregate were less than the aggregate total shown in the Debtor's

accounts payable; thus, through the chapter 11 the Debtor achieved a reduction in its obligations

to creditors of in excess of $100,000[1].  As to the second of these points, a party that had asserted

a claim against the Debtor and that the Debtor disputed did not file a proof of claim - notably,

that party was represented by counsel in state court and on several occasions during the

pendency of this case and prior to the June 1, 2012, bar date[2] her counsel discussed this chapter

11 case before the judge presiding over the state court matter and, separately, with counsel that

the Debtor's insurance carrier retained to represent the Debtor.  The pendency of that disputed

claim contributed to the Debtor's decision to file the petition to commence this case.  The

creditor was seeking damages for putative wrongful death, so the preclusive effect of the claims

bar date significantly preserved the estate for bona fide creditors.

20.    The Applicant also conferred with Mr. Dykstra to review the treatment of claims

filed by taxing bodies (to analyze that the Debtor's projected revenues and plan payments would

reconcile with the obligations of the Code for treatment of priority claims by taxing bodies) and

holders of unsecured, non-priority, general claims (to analyze that the Debtor's proposed

treatment would be feasible and meet the standards of, among other provisions, sections

1129(a)(7) and (a)(9) of the Code).  These analyses were critical for the Debtor's ability to

propose and confirm a plan of reorganization and were reasonable.  Feasibility and conformity of

proposed plan treatment to the obligations of the Code to support confirmation of a plan are

indispensable to successfully confirming a plan; just as the Debtor's performance under the plan

---

[1]  In part, the Debtor determined that in good faith it had listed one creditor for less than the amount that the creditor listed in its accounts receivable from the Debtor; the Debtor and the creditor respectively showed disparate amounts for the outstanding account.  The creditor had notice of this case, observed hearings early in this case, and received notice of the claims bar date, yet did not file a claim to contest the amount that the Debtor in good faith listed in its Schedule of Liabilities.
[2]  The Debtor served the notice of the bar date and various pleadings upon the creditor.

is beneficial to creditors, the Applicant's advice to the Debtor on these points was beneficial to

the estate and creditors.  The Applicant is entitled to be compensated for these services.

### D.     EMPLOYMENT OF PROFESSIONAL

21.     The Applicant expended 4.5 hours in performing services under this category, at a

value of $1,912.50; the Applicant is seeking allowance and compensation of $1,500.  A copy of

the entries for these services is included within Exhibit "D".

22.     The Debtor's employment and compensation of professionals is subject to chapter

3 of the Code and the Debtor was obligated to obtain authority of this Court to retain the

Applicant.  The Applicant prepared an application for this authority and a detailed disclosure of

his prior representation on the Debtor and relationship to creditors and the Debtor.  This Court

heard and approved the application.  These services were necessary for the Debtor to comply

with obligations under chapter 3 of the Code and benefitted the estate.  The fees for this category

of services are reasonable and the Applicant is entitled to be paid for them.

### E.     FINANCING

23.     The Applicant expended 36.4 hours in performing services under this category, at

a value of $11,630; the Applicant is seeking allowance and compensation of $11,600.  A copy of

the entries for these services is included within Exhibit "E".

24.     Financing is the lifeblood of any business operation.  Not uniquely, the Debtor

does not operate on a cash pay basis with its customers; the Debtor bills its customers after

providing its services and in the absence of financing must await payment to source funds from

the billings to pay its own expenses.  To meet this and obtain present access to funds upon

tendering billing, and prior to filing the petition to commence this case, the Debtor entered into a

factoring arrangement with the predecessor to Gibraltar Business Capital.  This financing

allowed the Debtor to obtain cash against a portion of its invoices, with the Debtor receiving an

additional portion of its billing (from Gibraltar Business Capital) upon the customer's payment of

an invoice.  Also prior to filing its petition, the Debtor entered into term loan financing with Fifth

Third and pursuant to this granted Fifth Third a lien upon assets.  When the Debtor filed its

petition to commence this case, it was indebted to Fifth Third in the approximate amount of

$225,000.  In short, when the Debtor filed its petition in this case both Gibraltar Business Capital

and Fifth Third claimed liens and interests, cognizable under section 725 of the Code, in and

upon the Debtor's assets and the position to assert rights under Chapter 3, Subchapter IV, of the

Code relative to the Debtor's use of cash proceeds generated from utilization of its assets.

25.     To utilize those proceeds in its operations, the Debtor was obligated to comply

with Chapter 3, Subchapter IV, of the Code, Rule 4001 of the Federal Rules of Bankruptcy

Procedure, and Rule 4001-2 of the Local Bankruptcy Rules for the Northern District of Illinois; a

shortfall by the Debtor in doing so could have jeopardized the Debtor's ability to utilize cash

proceeds from its use of assets and ability to operate.  The Debtor looked to the Applicant to

provide the analysis and advice to enable it to comply with its obligations and obtain the access

to financing that it required.  The Applicant provided these services and negotiated terms for the

Debtor's use of cash collateral to enable it to operate through this Court's confirmation of the

plan.

26.     The Applicant was successful at obtaining the requisite authority at a minimum of

cost: parties in interest negotiated the terms and the estate was thus spared the expense of the

Applicant's time, and the distraction of personnel of the Debtor away from operations, that would

attend contested hearings on the use of cash collateral.  The Applicant and the Debtor achieved

this result collaboratively by providing information and acceptable terms for adequate protection

to Gibraltar Business Capital and Fifth Third, and the Applicant supplemented this by

maintaining positive working relationships with their respective counsel.  This benefitted

creditors by reducing expense and enabling the Debtor's management to focus on operations.

The Applicant is entitled to be compensated for these services.

## F.    FIRST-DAY MATTERS

27.    The Applicant expended 13.8 hours in performing services under this category, at

a value of $5,175; the Applicant is seeking allowance and compensation of $5,000.  A copy of

the entries for these services is included within Exhibit "F".

28.    These services were substantially focused on the Debtor obtaining authority to

remit payment on payroll that accrued prior to the Debtor filing its petition for relief.  This

involved preparing the pleading to obtain this authority and negotiating with parties in interest to

consent to this relief.  These services benefited the estate by providing wage security to the

Debtor's employees, which was crucial to retaining them on its workforce: the Debtor's

employees cannot afford to support themselves outside of their earnings from the Debtor and,

simply put, would have been tempted to seek employment elsewhere if they had become

uncertain about receiving payment of their wages from the Debtor.  The Debtor needed to obtain

the relief to pay the employees and through the Applicant's services obtained the authority to do

so.  The Debtor retained its employees and continuity of its operations.  The Applicant provided

a benefit through these services and is entitled to be paid for them.

## G.     MEETING OF CREDITORS

29.     The Applicant expended 3.6 hours in performing services under this category, at a value of $1,530; the Applicant is seeking allowance and compensation of $1,500.  A copy of the entries for these services is included within Exhibit "G".

30.     As a small business debtor, the Debtor was obligated to both attend and provide information at the initial interview with the Office of the United States Trustee and appear and testify at the meeting of creditors. At a minimum of expense, the Applicant reviewed these obligations with the Debtor and prepared management for providing the requisite information and testimony, and appeared with the Debtor on both occasions and provided necessary advice in connection with the occasions.  These services were necessary for the Debtor discharging its obligations under the Code and the Applicant is entitled to be compensated for them.

## H.     REPORTS AND SCHEDULES

31.     The Applicant expended 18.8 hours in performing services under this category, at a value of $4,570; the Applicant is seeking allowance and compensation of $3,000.  A copy of the entries for these services is included within Exhibit "H".

32.     The Applicant advised the Debtor on its obligations to prepare (i) schedules of assets and liabilities and a statement of financial affairs, and (ii) monthly operating reports.  The former involved reviewing the information that was necessary to provide accurate and requisite information.  The latter involved advising the Debtor on the need to maintain ongoing records to record the required information in the monthly operating reports and complete them in time to file them on a monthly basis in accordance with the deadline for doing so.  The Applicant devoted time to this task and reduced the billing therefor to preserve the reduction in billing mentioned above.

I.      UNION MATTERS

33.     The Applicant expended 45 hours in performing services under this category, at a value of $18,405; the Applicant is seeking allowance and compensation of $17,000. A copy of the entries for these services is included within Exhibit "I".

34.     The Applicant and the Debtor were required to devote significant time to negotiating with the Union over employee issues, payment of outstanding obligations, and continuation of the collective bargaining agreement. Ostensibly, the Union was acting to preserve the interests of its rank and file. Seemingly, at times the Union acted defensively to protect against the Debtor's rejection of that agreement. Practically, the Union consumed time of the Debtor away from operations, and the Applicant away from focusing on the reorganization and plan, and did so out of proportion to the Debtor's interest in taking any action against the interests of the rank and file or in rejection of the collective bargaining agreement. To some extent, the foregoing may have been a function of the profile that has developed for rejection of collective bargaining agreements in various chapter 11 cases – the seeming ease and frequency of debtors in possession rejecting these agreements may have bred an over-concern on the part of the Debtor's Union about the Debtor's good faith and actual intentions about maintaining the agreement. In any event, the cost to the estate of responding to the Union's concerns far out-paced both the amount of unpaid obligations and the Debtor's interest in considering a rejection of the agreement. Put differently, the Union's approach to protecting its interests resulted in an inefficient use of the resources of the Debtor (and Reorganized Debtor) in relation to the interests of the rank and file that were truly at stake.

35.     In any event, the Debtor and the Applicant were obligated to attend to concerns that the Union raised and devoted the time that was necessary to do so. The Applicant and the

Debtor worked to communicate with and respond to the Union in a fashion to resolve

outstanding issues as efficiently as possible – and succeeded in doing so to the extent that this

Court was not required to preside over any contested hearings concerning the Union other than

two appearances on August 14, 2012 and August 21, 2012, for a total of 1.4 hours.  The Union

did not object to the plan and the rank and file maintained their attendance to operations.  The

Applicant benefitted the estate for his services in this category and is entitled to be compensated

for them.

### J.    PREPARATION OF FEE APPLICATION

36.    The Applicant expended 4.6 hours in performing services under this category, at a

value of $4,160; the Applicant is seeking allowance and compensation of $3,000.  The Applicant

is entitled to be compensated for these services.  A copy of the entries for these services is

included within Exhibit "J".

37.    In preparing the Application, Bruce de'Medici complied with the standards which

are set forth in the opinions in *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931

(N.D. Ill. 1983), *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D. Ill. 1987) and *In re Wildman*,

72 B.R. 700 (Bankr. N.D. Ill. 1987), Local Rule 5082-1, and the guidelines of the Office of the

United States Trustee.  The Applicant is entitled to be compensated for preparing the

Application, in accordance with *In re Alberto*, 121 B.R. 531 (Bankr. N.D. Ill. 1990) and *In re*

*NuCorp Energy, Inc*., 764 F.2d 655 (9th Cir. 1985).

### K.  EXPENSE SUMMARY

38.    The Applicant incurred expenses totaling $426.64 for postage, and scanning and photocopying through FedEx Office.  A table of these expenses follows; receipts are shown on Exhibit K.

| DATE | EXPENSE TYPE | EXPENSE AMOUNT |
|---|---|---|
| | | |
| 9/13/12 | Disclosure/Plan copying | $52.31 |
| 9/13/12 | Finish Disclosure/Plan copying | $45.66 |
| 9/18/12 | Postage | $8.85 |
| 10/24/12 | Postage – Amended Factoring Agreement to Gibraltar counsel | $1.10 |
| 11/25/12 | Photocopying – confirmation copies | $16.80 |
| 11/26/12 | Finish photocopying – confirmation copies | $4.37 |
| 12/19/12 | Postage – Notice of Confirmation | $83.29 |
| 1/2/13 | Photocopying – Fee Application Notice of Motion | $10.67 |
| 1/2/13 | Photocopying – Fee Application | $114.34 |
| 1/2/13 | Postage – Fee Application | $89.25 |
| | **TOTAL** | **$426.64** |

The Applicant incurred these for the benefit of the estate and in entitled to be reimbursed for them.

## II
## ALLOWANCE OF COMPENSATION

A.    STANDARDS FOR DETERMINING ALLOWANCE

39.    Section 330 of the Bankruptcy Code provides, in relevant part:

(a)(1) After notice . . . the court may award to . . . a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by . . . such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

40.    Pursuant to section 330, professionals applying for fees must demonstrate that

their services were actual, necessary and reasonable. Bankruptcy Rule 2016, in turn, requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016.

41.     To be compensable, services that professionals render to a debtor must produce a benefit to the estate. *In re Grabill Corp.*, 110 B.R. 356, 358-59 (Bankr. N.D. Ill. 1990) (Squires, J.) (citations omitted).  In assessing the reasonableness of attorneys' fees under section 330, Judge Squires considered the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill required to perform the legal services properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the result obtained; (9)
> the experience, reputation and ability of the attorneys; (10) the undesirability of
> the case; (11) the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

*In re McNichols*, 258 B.R. 892, 904-05 (Bankr. N.D. Ill. 2001) (Squires, J.).

42.     Regardless of the significance of certain individual factors in determining the value of professional services, the Court should primarily focus its attention upon the reasonableness of the services provided to the estate. As the United States Court of Appeals for the First Circuit has recognized:

> [I]t is important for a court to maintain a sense of overall proportion and not
> become enmeshed in meticulous analysis of every detailed facet of the
> professional representation. It is easy to speculate that the work could have been
> done in less time or with fewer attorneys or with an associate rather than a

partner. On the other hand, it is also possible that [the debtor] would not have

enjoyed the success it did had its counsel managed matters differently.

*In re Boston and Maine Corporation*, 776 F.2d 2, 10 (1st Cir. 1985) (quotations and citations

omitted).  The Seventh Circuit has recognized that the appropriate measure to determine the

reasonableness of attorneys' fees is the market based approach. *See Steinlauf v. Continental*

*Illinois Corp. (In the Matter of Continental Illinois Sec. Lit.*), 962 F.2d 566, 572 (7th Cir. 1992)

(stating that the "object in awarding a reasonable attorneys' fee, as we have been at pains to

stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length

negotiation . . ."). Similarly, as Judge Squires reasoned, "the attorney/client relationship [i]s one

in which the terms of the engagement should normally be upheld, including the fee arrangement,

so as not to unduly intrude upon the bargain struck between the parties who have entered into an

important professional relationship." *In re Famisaran*, 224 B.R. 886, 898 (Bankr. N.D. Ill. 1998)

(Squires, J.).

B.      APPLICATION OF RELEVANT CRITERIA AND STANDARDS

43.      In applying the criteria set forth above to this request for compensation, the Court

should consider foremost the effort required and expended by the Applicant, the reasonableness

of the services rendered and the results achieved.  All of the services performed by the Applicant

were required for the proper representation of the Debtor in this case and were authorized by the

Court and were performed by the Applicant at the request and direction of the Debtor. Pursuant

to Section 331 of the Bankruptcy Code and the generally applicable criteria of the time, nature,

extent, and value of the services performed, all of the Applicant's services are compensable.

Notably, but not by way of limitation, the Debtor's circumstances of having filed a second

petition for relief under chapter 11 of the Code brought a higher level of scrutiny to the Debtor's

feasibility and quality of present operations as well as a tighter time frame for submitting a plan

– when granting the Debtor's motion to extend the time to file a plan, this Court specifically articulated that because this case was the Debtor's "second chapter 11", it would grant only one extension and thus imposed a strict time frame upon the Debtor and the Applicant for this task. The Debtor and Applicant not only met that deadline but, as noted above, when compared to all chapter 11 cases the Debtor filed (and confirmed) its plan within a time frame that only a minority of chapter 11 debtors achieve.  Correspondingly, this required ongoing focus and time of the Applicant that precluded the Applicant from taking on any other matters with pending or imminent deadlines.  As this Court knows, the Applicant is a solo practitioner and working on this case (and waiting for this Court's award of compensation and the payment of that compensation) resulted in real-life financial implications for the Applicant.  Quite literally, the Applicant contributed to financing for this case and did so "out of his back pocket."  While the Applicant had other matters and did perform work on them, the time that the Applicant devoted to this file represented a very significant amount of his available time (and ability to generate revenue) during the pendency of this case.  The Applicant and the Debtor have had a long professional relationship – the Applicant first started working with the Debtor in 2004.  The Debtor could have retained any number of counsel but (knowing this) retained the Applicant for this case to maintain continuity of representation and apply the Applicant's sense of history and struggles through the Debtor's past challenges to bear on bringing this case to a successful resolution.

44.    Further, the amount of services rendered by the Applicant to achieve the results obtained for the benefit of the estate's creditors was reasonable in light of the complexity of the issues involved in this case.  The experience and expertise in bankruptcy cases and the quality of the services brought to this case by the Applicant further supports the requested compensation.

The Applicant charges an hourly rate that is comparable to the market for lawyers with his

experience (Exhibit "ii").  Furthermore, the rates at which the Applicant seeks compensation are

his standard hourly rates.  The Applicant's hourly rates and hours for which compensation is

sought are reasonable and appropriate.  The compensation request is well within an acceptable

range for comparable legal services in the Chicago metropolitan legal community and is

eminently fair given the efforts required of the Applicant in this case and the risk of non-

payment.

### III
### STATEMENT PURSUANT TO 11 U.S.C. 504
### AND BANKRUPTCY RULE 2016(a)

45.     Except to the extent that under section 504(b)(1) of the Code a professional may

share compensation within that party's firm, the Applicant has not agreed to share with any

person, firm, or entity any award of fees which it may receive for having represented the Trustee

in this case.  Furthermore, there is no agreement between the Applicant and any other party for

sharing compensation that any other person, firm or entity receives in connection with

representing the Trustee in this case.

### IV
### REQUEST FOR RELIEF

WHEREFORE, Bruce de'Medici, as counsel for Windmill Environmental Services, LLC,

prays that pursuant to 11 U.S.C. §§330(a) and 503(b) this Court allow final compensation to

Bruce de'Medici in the amount of $100,000 plus costs of $426.64, authorize the Reorganized

Debtor to remit payment thereon, and grant such further relief as is just.

Respectfully Submitted,
Bruce de'Medici

By____/s/ Bruce de'Medici

Bruce de'Medici (ARDC #6184818)
834 Forest Avenue
Oak Park, Illinois 60302
Tel: 312.731.6778

**SUMMARY SHEET**

| | | |
|---|---|---|
| IN RE: | ) | No. 12-03912 |
| | ) | |
| Windmill Environmental Services, LLC | ) | Hon. Judge Jack B. Schmetterer |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | | Hearing Date: 1/24/2013 |
| | | at 10:00 a.m. |

NAME OF APPLICANT:   Bruce de'Medici
ROLE IN THE CASE:   Windmill Environmental Services, LLC

CURRENT APPLICATION:

**Bruce de'Medici**

Amount of Fees Sought for Allowance      $100,000
Amount of Fees Sought for Payment       $100,000
Amount of Expense Reimbursement Sought:   $426.64

FEES PREVIOUSLY AWARDED:      -0-
COSTS PREVIOUSLY AWARDED:     -0-

RETAINER PAID:            $20,000 (tendered to the Applicant post-
confirmation and presently held in the Applicant's IOLTA account)

FEE APPLICATION

| NAMES OF PROFESSIONAL/ PARAPROFESSIONAL | YEAR ADMITTED TO PRACTICE | HOURS BILLED CURRENT APPLICATION | RATE | TOTAL BILLED (BEFORE WRITEDOWN) |
|---|---|---|---|---|
| Bruce de'Medici | 1980 | | $125[3]/$425 | $104,787.50 |
| Rita de'Medici | N/A | | $175 | $2,775 |

---

[3]  Travel billed at $125/hour.

# FEE BREAKDOWN

## Hours Incurred

| CATEGORY | HOURS |
|---|---|
| Asset Disposition | 9.4 |
| Business Operations | 118.9 |
| Claims Administration | 19.3 |
| Employment | 4.5 |
| Financing | 36.4 |
| First-Day | 13.8 |
| Meeting of Creditors | 3.6 |
| Reports and Schedules | 18.8 |
| Union | 45 |
| Fee Application | 14.8 |
| TOTAL | 284.5 |

**Fees Requested**

| CATEGORY | FEES |
|---|---|
| Asset Disposition | 3,000 |
| Business Operations | 47,000 |
| Claims Administration | 7,400 |
| Employment | 1,500 |
| Financing | 11,600 |
| First-Day | 5,000 |
| Meeting of Creditors | 1,500 |
| Reports and Schedules | 3,000 |
| Union | 17,000 |
| Fee Application | 3,000 |
| TOTAL | 100,000 |

**Fees Incurred**

| CATEGORY | FEES |
| --- | --- |
| Asset Disposition | 3,995 |
| Business Operations | 48,672.50 |
| Claims Administration | 7,512.5 |
| Employment | 1,912.50 |
| Financing | 11,630 |
| First-Day | 5,175 |
| Meeting of Creditors | 1,530 |
| Reports and Schedules | 4,570 |
| Union | 18,405 |
| Fee Application | 4,160 |
| TOTAL | 107,562.50 |